# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**CASE NO. 10-20306-CIV-ALTONAGA/Brown**

**FINALCA CASA DE BOLSA, C.A.**,

      Plaintiff,

vs.

**BANK OF AMERICA, N.A.**,

      Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court on cross motions for judgment on the pleadings: the

Defendant, Bank of America's Motion for Judgment on the Pleadings ("BoA's Motion") [D.E. 8]

and the Plaintiff, Finalca Casa de Bolsa, C.A.'s Response in Opposition to BoA's Motion, and Cross

Motion for Judgment on the Pleadings or, Alternatively, for Summary Judgment ("Finalca's

Motion") [D.E. 17]. The Court has carefully considered the parties' submissions and the applicable

law.

## I. BACKGROUND

According to the complaint, Finalca, a Venezuelan corporation with its principal place of

business in Caracas, Venezuela, began a business relationship in 2008 with Rosemont "P" Corp.,

a Florida corporation with its principal place of business in Miami, Florida. (*See* Compl. [D.E. 1]

¶¶ 9, 13). Rosemont "P" Corp. operated in response to a legal "loophole" in the Venezuelan

currency-exchange market in which transactions backed by securities issued by the Venezuelan

government are exempted from having to declare the currency exchange to the Venezuelan foreign-

exchange commission.  (*See id.* ¶ 14).  This "loophole" created a "swap" market under which one

who needs foreign currency buys, from a brokerage or a securities firm, securities issued by the Venezuelan government that are negotiable in local tender and have an equivalent value in foreign currency. (*See id.*). Approximately $80 million are negotiated through this "swap" market daily. (*See id.*).

Finalca used the "swap" to conduct its business through a Panamanian company it created known as Inverglobal Corp. (*See id.* ¶ 15). Finalca retained Rosemont "P" Corp., which held foreign-exchange money for its Venezuelan clients, who bought and sold U.S. dollars, under various sub-accounts. (*See id.* ¶¶ 17–18). Rosemont "P" Corp. then opened an account at the BoA under the name Rosemont "M" Corp. d/b/a Inverglobal Corp ("Rosemont "M" Corp."). (*See id.* ¶ 18). Rosemont's sole purpose was to hold title to the account for the benefit of Finalca. (*See id.*).

The only signatory on the account was Rosemont "P" Corp.'s president, Rama K. Vyasulu. (*See id.* ¶ 19). Finalca and its clients would transfer their money through the account in furtherance of Finalca's legitimate and lawful foreign-exchange business. (*See id.* ¶ 20). This relationship continued for about a year and a half before the U.S. government discovered that Vyasulu and Rosemont "P" Corp. were alleged to be doing exchanges in Puerto Rico that involved the fruits of illegal drug-related activities. (*See id.*). On April 4, 2009, Vyasulu was arrested, and the U.S. District Court for the District of Massachusetts issued a seizure warrant under which the U.S. government seized the funds in all accounts for which Vyasulu was a signatory — including all Rosemont "P" Corp.'s sub-accounts. (*See id.* ¶ 21). The case is styled *United States v. Vyasulu*, No. 1:09-cr-10081 (D. Mass. filed Mar. 18, 2009).

When the accounts were seized, approximately $1,400,000 were in the account. In response

Case No. 10-20306-CIV-ALTONAGA/Brown

to the warrant, BoA issued a check to the United States in the amount of $1,400,000. (*See id.* ¶ 22). BoA did not, however, close the Rosemont "P" Corp. account, and over the following weeks, deposits continued to be made into the various sub-accounts, including the Rosemont "M" Corp. account. (*See id.* ¶ 23). Before BoA decided that it no longer wished to continue its relationship with Rosemont "P" Corp., $2,593,314.59 had been deposited into the account. (*See id.* ¶ 24).

On June 18, 2009, BoA issued a cashier's check to Rosemont "M" Corp. for $2,593,314.59. (*See id.* ¶ 25 & Ex. A). The next day BoA wrote a letter to Vyasulu informing Rosemont "M" Corp. that the account had been closed. (*See id.* & Ex. B). Both the check and the letter ended up with Vyasulu's counsel. Under the terms of his pretrial release, however, Vyasulu was unable to do anything with the check without the permission of the U.S. District Court for the District of Massachusetts. (*See id.*).

Finalca's representatives of Inverglobal Corp. in Panama contacted BoA and requested that the check be reissued to them. (*See id.* ¶ 26). The check was worthless, according to Finalca, because Rosemont "M" Corp. existed for no purpose other than to open the account, which was now closed. (*See id.*). Furthermore, Finalca could not open an account in the name of Rosemont "M" Corp. to negotiate the check because Vyasulu was prohibited from taking action on the Rosemont companies under the terms of his pretrial release and because it was unlikely that Finalca would be able to open an account, owing to the circumstances of the account's closure. (*See id.* ¶ 27). Finalca informed BoA that it was the beneficial owner of the funds, but BoA refused to speak with Finalca's representatives because Rosemont "M" Corp. was the account holder. (*See id.*). In fact, BoA would speak only to Vyasulu; but he could not deal with BoA because of his bond conditions. (*See id.* ¶

3

Case No. 10-20306-CIV-ALTONAGA/Brown

28). In sum, Finalca had no way of obtaining the $2,593,314.59, and with no means to negotiate the check, it has now gone "stale" because it was issued more than six months before Finalca filed the complaint. (*See id.* ¶ 29).

After his arrest Vyasulu resigned from his position with Rosemont "M" Corp., and Diego Arnal has replaced him as president. (*See id.* ¶ 30). Finalca's counsel has conferred with representatives of the U.S. Attorney's Office, who have confirmed that the U.S. government does not intend to issue further seizure warrants for the account. (*See id.* ¶ 31). The U.S. government, moreover, has stated it has no interest in the monies represented by the check. (*See id.*). As a result, Vyasulu, as signatory for the account, moved the U.S. District Court for the District of Massachusetts for authorization to assign all rights, title, and interest in both the account and the check to Finalca. (*See id.* ¶ 32). The U.S. government did not oppose the assignment, and the court entered an order granting Vyasulu that permission. (*See id.* & Ex. C). Acting on that order, Arnal, as president of Rosemont "M" Corp., assigned, on January 6, 2010, all rights, title, and interest in both the account and the check to Finalca. (*See id.* ¶ 33 & Ex. D).

Because of the circumstances, however, the check remains non-negotiable by Finalca, and BoA refuses to issue a new check or transfer based on the assignment. (*See id.* ¶ 34).

* * *

On January 29, 2010, Finalca filed this three-count complaint against BoA in the U.S. District Court for the Southern District of Florida. In Count I Finalca seeks a declaration that it is the legal owner of the funds in the account and the check, and that the assignment is valid and qualifies Finalca to receive the funds represented by the check. (*See id.* 8–9). In Count II Finalca

seeks a judgment in the amount of $2,593,314.59 on the ground that BoA has converted Finalca's funds. (*See id.* 9–10). And in Count III Finalca seeks an injunction requiring BoA to cancel the check and to issue a new check payable to Finalca in the amount of $2,593,314.59. (*See id.* 10–11).

On February 16, 2010, BoA filed an answer — denying all but three paragraphs of the complaint — and raising 16 affirmative defenses. (*See* BoA's Answer & Affirmative Defenses [D.E. 5]). Later, on February 23, BoA filed the BoA Motion currently before the Court. According to BoA, Finalca has failed to join indispensable parties to the lawsuit (*see* Mot. 1–2); has failed to state a claim for conversion (*see id.* 2–3); and has failed to state a claim for injunctive relief (*see id.* 3–4). On April 8, 2010, Finalca filed a Response in Opposition to BoA's Motion and a Cross Motion for Judgment on the Pleadings or, Alternatively, for Summary Judgment.[1]

## II. LEGAL STANDARD

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hart v. Hodges*, 587 F.3d 1288, 1294 n.4 (11th Cir. 2009) (quoting *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) (internal quotation marks omitted)). The trial court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving

---

[1] The Court previously denied Finalca's Motion, but only to the extent it sought a motion for summary judgment because it did not comply with Local Rule 7.5 C.2 of the U.S. District Court for the Southern District of Florida. (*See* Apr. 9, 2010, Order [D.E. 18]). Hence, Finalca's Motion serves only as an opposition to BoA's Motion and as a motion for judgment on the pleadings.

Case No. 10-20306-CIV-ALTONAGA/Brown

party."  5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE

§ 1368, at 227 (3d ed. 2004).

## III. ANALYSIS

### A.    BoA's Motion

BoA contends Finalca has failed to join indispensable parties, *i.e.*, Rosemont "M" Corp. and

Vyasulu.  (*See* BoA's Mot. 1–2).  According to BoA, the Court should not grant declaratory relief

for Finalca unless all parties who have an interest in the determinations of the questions raised in the

suit are before the court, and here that includes the entity that held the account and its only

authorized signatory.  (*See id.* 2).  BoA alternatively argues that the Court should order the joinder

of Rosemont "M" Corp. and Vyasulu.

BoA's argument fails.  Since BoA's Motion is for a judgment on the pleadings, the Court

must take all facts in the complaint as true and view them in the light most favorable to Finalca.  *See*

*Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006); WRIGHT & MILLER, *supra*,

§ 1368, at 227.  According to the complaint and its attachments,[2] Vyasulu successfully moved the

U.S. District Court for the District of Massachusetts for permission to assign all rights, title, and

interest in both the account and the check to Finalca.  (*See* Compl. ¶ 32 & Ex. C).  Acting on that

authorization, Arnal, as president of Rosemont "M" Corp., assigned all rights, title, and interest in

both the account and the check to Finalca.  (*See id.* ¶ 33 & Ex. D).  These allegations could not be

clearer — neither Vyasulu nor Rosemont "M" Corp. has an interest in the determinations of the

_____

[2] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  FED. R. CIV. P. 10(c).

questions raised in this case.

Next, BoA contends that Finalca's claim for conversion fails because BoA previously issued a check for the entire balance to Vyasulu — and therefore "cannot be said to have converted the funds pertaining to that account *to its own use*" — and because Finalca does not sufficiently allege that BoA had the requisite intent for a conversion claim.  (BoA's Mot. 3).

The most thorough description of the law of conversion in Florida is found in *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So. 2d 858 (Fla. 1948) (en banc):

> The gist of a conversion has been declared to be not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person to the possession of which he is entitled. A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.

*Id.* at 860 (citations and internal quotation marks omitted).

In Count II Finalca alleges that Finalca is the lawful and true owner of the funds in the account and represented by the check (or, alternatively, has acquired all rights and interests in the account and the check through Rosemont "M" Corp.'s assigning them to Finalca) (*see* Compl. ¶¶ 40–41); that Finalca has demanded BoA to pay the funds to which Finalca holds lawful title (*see id.* ¶ 42); that Finalca has rejected that demand (*see id.*); and that, by the rejection, BoA "is retaining dominion upon Finalca's funds without authority to do so, and its dominion and retention of Finalca's funds deprives Finalca of its property permanently or indefinitely" (*id.* ¶ 43).  Again, the Court must view these allegations in the light most favorable to Finalca.  *See Hardy*, 449 F.3d at 1359; WRIGHT & MILLER, *supra*, § 1368, at 227.

BoA contends that because it is alleged to have previously issued the check to Vyasulu and

Case No. 10-20306-CIV-ALTONAGA/Brown

Rosemont "M" Corp., it cannot be said to have converted the funds.  (*See* BoA's Mot. 3).  But that ignores Finalca's allegations that, after Rosemont "M" Corp. assigned all rights and interests in the check and the account to Finalca, BoA refused to pay Finalca its funds, and thus is wrongfully depriving those funds from Finalca permanently or indefinitely.  (*See* Compl. ¶¶ 40–43).  The Court is unpersuaded on this ground. And although it is true the Florida Supreme Court once stated, "[w]here there is a taking of chattels *with intent* to exercise over them an ownership inconsistent with the real owner's right of possession, there is a conversion," *Quitman Naval Stores Co. v. Conway*, 58 So. 840, 840 (Fla. 1912) (emphasis added), the Florida Supreme Court later stated, "[t]he expression, 'with intent to deprive the true owner,' or 'with intent to convert,' is sometimes incorporated into definitions of conversion, as if the element of intent were a universal qualification of the wrong. But really it is only material when the act complained of does not speak for itself," *Star Fruit Co.*, 38 So. 2d. at 860 (some internal quotation marks omitted).  In other words, failing to specifically allege "intent" is not determinative as long as the act complained of speaks for itself.[3] In this case BoA's alleged holding of Finalca's funds and refusing to pay them to Finalca sufficiently speaks of BoA's intent to wrongfully deprive Finalca of its funds.  *See Mayo v. Allen*, 973 So. 2d 1257, 1258 (Fla. 1st DCA 2008) ("Conversion may be demonstrated by a plaintiff's demand and a defendant's refusal."). The Court is unpersuaded on this ground as well.

Last, BoA claims that Finalca has failed to state a claim for injunctive relief.  BoA claims that

---

[3] Under today's pleading standards, one would, at any rate, be required to plead facts demonstrating the requisite intent; simply pleading that BoA intended to convert Finalca's funds, without more, would amount only to a legal conclusion.  *See Edwards v. Prime, Inc.*, — F.3d —, 2010 WL 1404280, at *8 (11th Cir. 2010) ("We are not . . . required to accept the labels and legal conclusions in the complaint as true.").

an adequate remedy exists at law — *i.e.*, a breach-of-contract action against Rosemont "M" Corp. — and that because the sums the Plaintiff seeks are "clearly measurable," "there exists absolutely no possibility of irreparable harm." (BoA's Mot. 3–4).

Here, Finalca requests a "mandatory injunction, which orders a party to 'take action.'" *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1221 (11th Cir. 2002) (quoting *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484 (1996)).

> A district court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

BoA's last argument fares no better than its first two.  First, BoA cites paragraphs two and five of the complaint to state that Finalca has a breach-of-contract claim against Rosemont "M" Corp., yet it is unclear whether either paragraph contains the elements requisite to maintain such an action (for example, in neither is the existence of a contract, or the breach thereof, alleged).  It is also unclear whether a breach-of-contract action would provide an adequate remedy at law: as Finalca states, "Rosemont has done everything it can do in order to help Finalca recover its funds. . . . Rosemont is not causing the injury to Finalca."  (Finalca's Opp'n 14–15).

Next, BoA argues that because Finalca's alleged damages are for a sum certain, no possibility of irreparable harm exists.  (*See* BoA's Mot. 3–4 (citing *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979), and *Barclays Am. Mortgage Corp. v. Holmes*, 595 So. 2d 104, 105 (Fla. 5th DCA 1992))).  The cases BoA cites stand only for the proposition that there is no

Case No. 10-20306-CIV-ALTONAGA/Brown

irreparable harm where money damages may compensate the loss — *i.e.*, where an adequate remedy at law exists. *See Jackson Dairy*, 596 F.2d at 72 ("[I]t has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages is adequate compensation a preliminary injunction will not issue."); *Holmes*, 595 So. 2d at 105 ("[I]rreparable harm does not exist where the potential loss is compensable by money damages. . . . Holmes will not suffer irreparable harm because he has an adequate remedy at law to seek and obtain a money judgment."). But Finalca has sued BoA, not Rosemont "M" Corp.. Finalca correctly notes that, since it is not in privity with BoA, "Finalca is . . . in danger of having no adequate legal remedy against BoA. Specifically, if the Court denies Finalca's claim for conversion but grants its request for declaratory relief, Finalca will have no legal remedy, other than a mandatory injunction, requiring BoA to tender payment." (Finalca's Opp'n 16 (citation omitted)).[4]

**B.      Finalca's Motion**

In light of its response in opposition to BoA's Motion, Finalca has moved for a judgment on the pleadings as well. (*See* Finalca's Mot. 16). But in its answer, apart from raising 16 affirmative defenses, BoA has denied each of Finalca's allegations except for paragraph 10 (that BoA does business in Florida and has its principal place of business in North Carolina), paragraph 20 (that Finalca and its clients transferred money through the account for about a year and a half), and paragraph 21 (that the U.S. District Court for the District of Massachusetts issued a seizure warrant

---

[4] Incidentally, that an adequate remedy at law may exist under the law of conversion does not warrant granting partial judgment on the pleadings in BoA's favor. "A party may state as many separate claims or defenses as it has, regardless of consistency." FED. R. CIV. P. 8(d)(3).

10

Case No. 10-20306-CIV-ALTONAGA/Brown

to seize all of the accounts for which Vyasulu was a signatory).[5]  It follows that the Court may not

grant Finalca's Motion, because, when considering a motion for judgment on the pleadings, "[a]ny

allegations of the moving party which are denied must be taken as false." WRIGHT & MILLER, *supra*,

§ 1368, at 254 (quoting *Brinich v. Reading Co.*, 9 F.R.D. 420, 421 (E.D. Pa. 1949)); *see also id.*,

*supra*, § 1368, at 251 ("[T]he plaintiff may not secure a judgment on the pleadings when the answer

raises issues of fact that, if proved, would defeat recovery.").

### IV. CONCLUSION[6]

For the reasons stated in this Order, it is

**ORDERED AND ADJUDGED** as follows:

1.    BoA's Motion **[D.E. 8]** is **DENIED**.

2.    Finalca's Motion **[D.E. 17]** is **DENIED**.

---

[5] Apparently, BoA did not intend to admit either paragraph 20 or 21. (*See* BoA's Resp. in Opp'n [D.E. 19] 1 n.1 ("It should be noted at the outset that the only paragraph of the Complaint which Bank of America partially admitted was Paragraph 10.")).  But the law on pleadings is as follows: "An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied." FED. R. CIV. P. 8(b)(6).  BoA did not deny or even address paragraphs 20 and 21 in its answer.  Thus, those paragraphs are admitted.

[6] The Court would be remiss not to state that this case seems eminently resolvable without further Court intervention.  To the complaint, Finalca has attached the check, issued by BoA to Rosemont "M" Corp., for $2,593,314.59.  Finalca has also attached the letter, written by BoA and addressed to Rosemont "M" Corp., stating that the account had been closed and enclosing the check, thereby indicating that BoA has no interest in those funds.  Finalca has also attached Rosemont "M" Corp.'s assignment of rights, title, and interest in the account and the check to Finalca.  In its answer, BoA has *denied* that it issued the check and the letter to Rosemont "M" Corp. (*see* BoA's Answer ¶ 7) — a denial, the Court notes, certified as being "warranted on the evidence" or "reasonably based on belief or lack of information." FED. R. CIV. P. 11(b)(4).  If BoA later determines that the facts as alleged are true, simply issuing another check to Finalca would seemingly resolve the dispute.  BoA, of course, may have a reason not to do so.  But if that is the case, it has not stated why with any specificity in its answer or its papers on these motions, apart from its general denials.

Case No. 10-20306-CIV-ALTONAGA/Brown

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of April, 2010.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

12